IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DARNELL LOVE PITTMAN, SR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 9:22-CV-60 |
| | § | |
| WARDEN, USP BEAUMONT | § | |
| | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Darnell Love Pittman, Sr., an inmate currently confined at USP Beaumont, proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The above-styled action was referred to the magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural Background

Petitioner contests Incident Report #3502944 wherein he lost 27 days of good conduct time and was segregated for 7 days for violating code 299, engaging in disruptive conduct (making threatening comments to a BOP employee).[1] Petitioner alleges he was denied due process when the disciplinary hearing officer ("DHO") denied him the right to present documentary evidence in his defense. Petitioner also alleges the DHO was biased against him, issuing a false report in relation to the disciplinary hearing. Specifically, Petitioner contends the DHO (1) falsely indicated Petitioner admitted that he was once apart of a riot, a statement Petitioner denies making, (2) falsely stated that Petitioner did not provide his staff representative with documentary evidence, (3) and falsely told Petitioner and his staff representative that the DHO would not find Petitioner guilty based upon the charging instrument. Petitioner concedes he did not file a second appeal when exhausting his

---

[1] Petitioner also lost 3 months of email privileges, but does not complain about that sanction.

administrative remedies, arguing vaguely his ability to do so was impeded by BOP staff. Petitioner requests the disciplinary conviction be overturned and his good conduct time restored.

Respondent was ordered to show cause and filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment on September 12, 2022 (doc. # 13). Respondent argues Petitioner failed to exhaust his administrative remedies and that all due process was afforded under *Wolff v. McDonnell*, 418 U.S. 539 (1974). More than ample time has past, yet Petitioner has failed to file a reply.

In support of the motion for summary judgment, Respondent relies on the following evidence:

| | |
|---|---|
| **Exhibit A**: | Declaration of Stephen Hughes (doc. # 13-1, pgs. 2-4); |
| Attachment 1: | DHO Report (doc. # 13-1, pgs. 6-10); |
| Attachment 2: | Incident Report (doc. # 13-1, pgs. 12-14); |
| Attachment 3: | Notice of Discipline Hearing (doc. # 13-1, pg. 16); |
| Attachment 4: | Inmate Rights at Discipline Hearing (doc. # 13-1, pg. 18); |
| **Exhibit B**: | Declaration of John P. Rosa (doc. # 13-1, pgs. 20-21); |
| Attachment 1: | Administrative Remedy Program (doc. # 13-1, pgs. 23-30); |
| Attachment 2: | Administrative Generalized Retrieval (doc. # 13-1, pgs. 32-33); |
| Attachment 3: | Regional Administrative Remedy Appeal (doc. # 13-1, pgs. 35-43). |

## Standard of Review

*Motion to Dismiss*

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate a case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation and internal quotation marks omitted). "The district court 'has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Stiftung v. Plains Marketing, L.P.*, 603 F.3d 295, 297 (5th Cir 2010) (quoting *Williamson v. Tucker*,

645 F.2d 404, 413 (5th Cir. 1981)). When considering whether subject matter jurisdiction exists, a district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Krim*, 402 F.3 at 494. The party seeking federal court review bears the burden of demonstrating that jurisdiction is proper. *See Stiftung*, 603 F.3d at 297.

*Motion for Summary Judgment*

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

In making this determination, the court must consider the records as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The court may not weigh the evidence or evaluate the credibility of witnesses. *Id*. Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." FED. R. CIV. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Colotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the

nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec., Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

Analysis

*Exhaustion of Administrative Remedies*

      A district court has the authority to grant a writ of habeas corpus if a prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241. Although the statute does not explicitly require prisoners to exhaust available administrative remedies before filing a petition, the United States Court of Appeals for the Fifth Circuit has held that prisoners must exhaust available administrative remedies before seeking relief in court. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). In order to satisfy the exhaustion requirement, "a prisoner must complete the administrative process in accordance with applicable procedural rules . . . ." *Woodford v. Ngo*, 548 U.S 81, 90-91 (2006). As a result, inmates must exhaust their administrative remedies in a procedurally correct manner. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

      The BOP has established a three-tiered administrative remedy procedure for federal prisoners. *See* 28 C.F.R. §§ 542.10—542.19 (2003). Under this system, an inmate may file a formal grievance with the warden if informal resolution is not successful. *See id*. at § 542.13. Once the warden denies an inmate's grievance, the prisoner may appeal to the Regional Director. If dissatisfied with that response, the inmate may pursue a final appeal to the BOP's Office of General Counsel. *See id*. at § 542.15(a). Administrative remedies have not been exhausted until the inmate's claim has been filed and denied at all levels. *See Irwin v. Hawk*, 40 F.3d 347, 349 n. 2 (11th Cir.1994), *cert denied*, 516 U.S. 835 (1995).

Here, Petitioner concedes he did not file an appeal to the Central Office. Petitioner argues he was impeded in his efforts when the grievance counselor refused to search the "whole administrative remedy index file just to provide" Petitioner with a copy of the Regional Director's response. Petitioner submits a Declaration of another inmate who witnessed this encounter in support of his reason for failing to exhaust. Original Petition, Exhibit A, Declaration of Derrick Gilliam (doc. # 1, pg. 18). Petitioner argues he had to have the response to include with his appeal or it would have been denied. Thus, he made no effort to file the appeal.

While § 542.15(b)(1) states that an appeal must be accompanied by one complete copy or duplicate original of the institution request and response, § 542.17 allows for resubmission if the appeal was rejected. "When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal. § 542.17. Petitioner clearly could have filed an appeal and explain he lost the original (assuming that to be the case) and the grievance coordinator refused to give him a copy. In fact, the grievance coordinator advised Petitioner to make an inquiry with the Regional Office. Petitioner made no effort to do so. If the appeal was rejected, and Petitioner was denied the ability to resubmit and/or was unable to resubmit as he could not obtain a copy of the response, any such efforts would be considered by the court in the exhaustion analysis. The BOP should have been given the opportunity to correct its own error, if any, before Petitioner sought judicial review. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). Petitioner's assumption that his appeal would be denied is insufficient to establish futility and/or interference in the grievance process. Petitioner's § 2241 should be denied for failure to exhaust administrative remedies. Alternatively, the petition § 2241 should be denied on the merits.

*Wolff Factors*

Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Loss of commissary, telephone, and visiting privileges do not trigger due process protections. *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000). Furthermore, imposition of solitary confinement, or disciplinary segregation, absent atypical punishment, does not trigger due process protection. *Wilkinson v. Austin*, 545 U.S. 209, 125 (2005).

The Supreme Court has historically held that the due process clause is applicable to disciplinary proceedings where a prisoner is threatened with a loss of good time. *Wolff v. McDonnell*, 418 U.S. 539 (1974). When a prisoner has a liberty interest in good time credit, revocation of such credit must comply with minimal procedural requirements. *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

The due process that an inmate must receive in a disciplinary hearing is (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written statement of the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken, (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case, and (4) some assistance in the collection and presentation of evidence if either the inmate is illiterate or the case appears complex. *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Walker v. Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993); *Wolff v. McDonnell*, 4 18 U.S. 539, 563-66 (1974).

As argued by Respondent, Petitioner was afforded all the due process protections as contemplated by *Wolff*. The competent summary judgment evidence shows Petitioner was given a copy of the Incident Report No. 3502944 by Officer Z. Toney on May 11, 2021, sixteen days before the disciplinary hearing. Exhibit A, ¶ 4; Attachment 2. The Incident Report alleged the following:

> Approximately 0950 am inmate Pittman, Darnell, #30282-160 came into my office in unit 4a. Inmate Pittman was complaining about not getting enough recreation time out of the cell. Inmate Pittman made the commit [sic] that Warden Gomez and Captain Norris are not above the Director, and do not have the authority to make

> changes on how much recreation time a [sic] inmate gets. Inmate Pittman also made the commit [sic] that he didn't give a damn to stand up for what was coming to him and had been a big part in creating a RIOT and is not afraid to get some things jumped off here. Inmate Pittman made the statement that a [sic] officer got stabbed at Coleman and that was the reason why he is at McCreary.

Attachment 2, Incident Report (doc. # 13-1, pg. 12). The investigating lieutenant advised Petitioner of his rights and Petitioner stated, "I didn't mean anything by that, I was upset about getting screwed out of some rec time. I was not threatening him or encouraging others to demonstrate. How could I create a demonstration when I was the only inmate in his office.". *Id*., pg. 14. The Incident Report was then forwarded to the Unit Disciplinary Committee ("UDC") for further disposition. Exhibit A, ¶ 4; Attachment 2, pg. 14.

The UDC hearing for the Incident Report No. 3502944 was held May 13, 2021. *Id*., ¶ 5; Attachment 2. After the UDC reviewed the incident report, the committee referred the report to the DHO for consideration of greater sanctions than available at the UDC. *Id*. The UDC Chairman provided Petitioner with the Notice of Discipline Hearing and the Inmate Rights at a Discipline Hearing form on the same day. *Id*.; Attachments 2-4.

The disciplinary hearing was held on May 27, 2021. *Id*.; Attachment 1. Petitioner was advised of his rights. *Id*. Chief Psychologist, T. Parsons appeared as Petitioner's staff representative and stated, "Inmate Pittman wanted me to assist him in understanding the discipline process, and the charges. He is a Care 3 Mental Health inmate, but found to be competent and responsible at the time of the charges. He didn't request anything more than that." Attachment 1. Petitioner waived the right to witnesses, but testified on his own behalf. *Id*. Petitioner stated, "I never said any of that. I just spoke facts, no threats." *Id*. The DHO noted that Petitioner did not raise any issues, nor express any concerns with the disciplinary process, and did not provide any documentary evidence to the DHO. *Id*. In addition, the DHO noted Petitioner did not request video evidence be reviewed. *Id*. In finding Petitioner guilty, the DHO relied on the Incident Report (BP-A288), Incident Report/Mental Health Evaluation (BOP-IRMHE), and Notice of Discipline Hearing Before the DHO (BP-A294). The following describes the evidence relied upon by the DHO to support its findings:

7

You were originally charged with the violation of prohibited acts Code 203; Threatening Bodily Harm and Code 212; Engaging in a Group Demonstration, however, after reviewing your incident report I found the reported behavior did not meet the necessary element for the charge of Code 203. However, that particular behavior did meet the element for the charge of Code 299; Disruptive Conduct-(High) most like, Code 203; Threatening Bodily Harm. As such, the appropriate change was made, and discussed with you prior to the DHO hearing beginning. Your hearing did not have to be postponed for additional notification, as nothing was added or deleted from Section 11 of the original incident report; so appropriate notification for the charge had already been established, and you had adequate time to prepare your defense, prior to the DHO hearing. Additionally, I found the charge of violating Prohibited Acts Code 212; Engaging in a Group Demonstration, to be unsubstantiated, as there was insufficient evidence presented in Section 11 to support that particular charge. As such, I informed you that I would not be hearing that charge.

You were found to have committed the prohibited act, Code 299; Conduct which Disrupts the Orderly Running of the Institution, most like Code 203; Threatening Another with Bodily Harm, while housed at U.S.P. McCreary. The specific evidence relied upon in making this determination was the written statement in the form of an incident report provided by Correctional Counselor, W. Foster (quoted above).

\*\*\*

As I stated to you at the conclusion of your hearing, I found Counselor Foster held the greater weight of evidence in the case. I found your denial of the charge did not outweigh Counselor Foster's written testimony. As I stated to you during the hearing, I could not ignore the fact you did not deny your statements as described by Foster in Section 11 of the incident report, you only denied the context in which he had taken, claiming they were facts, and not threats. I noted that you were unable to provide any legitimate answer when I questioned you as to how those, "facts" were related to your conversation with Counselor Foster. I found a reasonable person would conclude your statement of "[I] didn't give a damn to stand up for what was coming to [me] and had been a big part in creating a RIOT and [am] not afraid to get some things jumped off here," along with the statement, "Inmate Pittman made the statement that a officer got stabbed at Coleman and that was the reason why he is at McCreary," served no purpose, and had no bearing in the conversation regarding your complaint about not getting enough recreation time. I found the only reason a person would bring up those so-called, "facts" would be to intimidate and threaten someone, by indicating that you were not afraid to cause a disturbance, or assault a staff member, as you had either done it before, or were involved in such an act, and would do it again. I found your actions that day caused Counselor Foster to stop his routine duties and address your behavior, which if went unchecked had the potential to jeopardize the safe and orderly running of this institution, and those actions were most like the violation of threatening bodily harm.

Lastly, I was finishing your hearing, I couldn't ignore the fact that you looked at Dr. Parsons and stated, "You might as well go ahead and put me on suicide watch. You don't know who you're f---ing with, I've been to the ADX before. Y'all don't know who you f—ing with." After you made those statements, I informed you the behavior you were displaying in front of me, was in fact the exact behavior Counselor Foster claimed you exhibited in his office on May 11, 2021, which led to this hearing, and

> furthermore was the exact behavior you claimed you did not do. After I made my statement concerning your behavior, you made no further comment.
>
> Therefore, based on the above mentioned evidence, I found the report substantiates the fact that you committed the prohibited acts, Code 299; Conduct which Disrupts the Orderly Running of the Institution, most like Code 203; Threatening Another with Bodily Harm.

Attachment 1, DHO Report.

As punishment, Petitioner was sanctioned with the disallowance of 27 days good conduct time, 7 days segregation, and lost of email privileges for 3 months. *Id*. Petitioner was advised of his right to appeal and was provided a written copy of the DHO Report on June 15, 2021. *Id.*

*Evidentiary Standard*

In reviewing prison administrative actions, the findings of a prison disciplinary hearing will not be disturbed unless they are arbitrary and capricious. *Stewart v. Thigpen*, 730 F.2d 1002, 1005 (5th Cir. 1984); *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 455 U.S. 992 (1982). "The federal courts cannot assume the task of retrying all disciplinary disputes." *Smith*, 659 F.2d at 545. Accordingly, federal courts do not review a DHO's factual findings *de novo*. Instead, the courts will only consider whether the decision is supported by "some facts" or by a "modicum of evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55 (1985); *Hudson v. Johnson,* 242 F.3d 535, 536 (5th Cir. 2001); *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986), *cert. denied*, 476 U.S. 1117 (1986). The federal court is not required to examine the entire record, independently assess the credibility of witnesses or weigh the evidence to determine whether there is sufficient evidence to support the factual findings of the DHO. *Hill*, 472 U.S. at 455.

In the present case, the DHO acted under the applicable regulation, 28 C.F.R. § 541.8(f), which states, "[t]he DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." *Id*. In this case, the DHO considered the staff member's written report, the Petitioner's statements, and then based her decision on the greater weight of the evidence. While Petitioner makes after-the-fact assertions of bias by the DHO, Petitioner officers nothing to

9

demonstrate the DHO was not fair and neutral. Petitioner has presented nothing to substantiate or support an allegation that the DHO had undue bias or preconceived opinions. The record reflects the DHO took efforts to evaluate the charges and the evidence, and explained to Petitioner that the original charges were not appropriate given the facts alleged in the incident report and modified the charges accordingly. These efforts specifically rebut any allegation of bias. As to Petitioner's complaint that he was denied the right to produce documentary evidence, Petitioner cannot show prejudice. The two exhibits Petitioner references as the requested documentary evidence only address Petitioner's mental health status and have nothing to do with the charges against him. Original Complaint, Exhibit C & D. The DHO's decision was supported by some evidence and this court will not re-weigh the evidence nor independently assess the credibility of the witnesses.

Based on the foregoing, the undersigned concludes that Petitioner's disciplinary proceeding was consistent with the requirements of due process, and the decision of the DHO was supported by at least "some evidence." The decision will not be overturned.

## Recommendation

This petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 should be denied.

## Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United*

*Servs. Auto. Assoc'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 23rd day of July, 2023.

_____
Zack Hawthorn
United States Magistrate Judge